Andrew Gunem (SBN 354042)
Sam Strauss (to be admitted *Pro Hac Vice*)
Raina Borelli (to be admitted *Pro Hac Vice*)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

*Attorneys for Plaintiff and the Proposed Class*
*Additional Counsel Listed in Signature Block*

## THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| SUSAN GEHRINGER on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; and ANCESTRY.COM LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 8:24-cv-02810<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF CAL CIV. CODE § 3344; CALIFORNIA MISAPPROPRIATION OF NAME OR LIKENESS; AND CAL. BUS. & PROF. CODE § 17200 ET SEQ. ("UCL")**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

Plaintiff SUSAN GEHRINGER, by and through her attorneys, makes the following allegations on information and belief, except as to factual allegations pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF ACTION

1.    California law protects every individual's right to control the commercial use of their name, persona, and identity. Cal. Civ. Code § 3344. Californians have the right to exclude anyone from using their name and persona to advertise without their prior consent. *Id.* "Any

person who knowingly uses" a name and persona "for purposes of advertising or selling, or soliciting purchases of, products . . . or services, without [Plaintiff's] prior consent," thereby violates California law. *Id.*

2.    Plaintiff Susan Gehringer ("Plaintiff") and members of the proposed class (the "Class" or "Class members") seek damages, an injunction, and additional relief from Defendants ("Ancestry" or "Ancestry.com"), who own and operate the website www.ancestry.com. Ancestry used Plaintiff's and Class members' names and personas to promote paid subscriptions to the Ancestry website without consent in violation of Californias right of publicity statute, Cal Civ. Code § 3344, California common law prohibiting misappropriation of a name or likeness, and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*

3.    Plaintiff and Class members are private individuals who have no relationship with Ancestry. Plaintiff and the Class have never used Ancestry.com, nor did they provide their names, photographs, or any other personal information to Ancestry.

4.    Plaintiff was seriously distressed to discover that Ancestry is using the names and photographs of California students and teachers without their consent to advertise paid subscriptions to Ancestry.com.

5.    Plaintiff and the Class did not consent to Ancestry using their names, photographs, and personas to promote Ancestry.com subscriptions.

6.    Ancestry uses Plaintiff's and Class members' names and likenesses in at least three advertising techniques. In all three advertising techniques, Ancestry displays the Plaintiff's and Class members' photographs in low-resolution or time-limited formats to a potential customer. Ancestry promises the potential customer that purchasing a paid subscription to Ancestry.com will reveal the full versions of Plaintiff's and Class member's photographs and personal information. Ancestry promises that a paid subscription will also deliver many additional services, including the ability to search for and view billions of additional records about millions of other individuals. Searchable records included with an Ancestry.com subscription include yearbook photos, marriage records, baptism records, death certificates, divorce records, photographs of grave sites, and others.

7.      In the first of its advertising techniques, Ancestry provides a publicly accessible landing page on which a visitor may search by name and location for any person. In response to searches for the Plaintiff's and Class members' names, Ancestry delivers a list of yearbook photographs in its possession showing the Plaintiff's and Class members' names and faces. Plaintiff's and Class members' photographs are accompanied by promotional text urging the visitor to "Sign Up Now" for an Ancestry.com subscription. The promotional text promises that "There's more to see" about the Plaintiff and Class members if the visitor buys a subscription, including higher-resolution photographs and additional personal information about Plaintiff and Class members, such as city of residence, estimated age, and high school graduation year.

8.      In the second advertising technique, Ancestry sends promotional emails and on-site messages to users who have provided their email addresses to Ancestry but have not yet purchased a paid subscription plan. These emails and messages use the Class members' names and identities. For example, Ancestry sends promotional emails to non-paying users with the subject line "What should you explore next for [Class member]?" A link in the body of the email encourages the user to click on the Class member's name to view records about her. Users who click the link and attempt to view records about the Class member receive in response a webpage asking the user to subscribe to Ancestry.com.

9.      In the third advertising technique, Ancestry offers a two-week "free trial" membership during which users may access and use the full range of services associated with an Ancestry website subscription. "Free trial" users may search for, view, print, and share the Plaintiff's and Class members' photographs and personal information including cities of residence, estimated birth years, and graduation dates. Ancestry's sole purpose for using the Plaintiff's and Class members' photographs and personal information as part of its "free trial" membership is to solicit the purchase of paid memberships.

10.      By using Plaintiff's and Class members' names, photographs, and identities in its advertising, Ancestry misleads the consuming public into believing Plaintiff and Class members are Ancestry.com users, willingly uploaded their personal information to Ancestry.com, and endorse Ancestry's subscription product. In fact, Plaintiff and the Class have no relationship with

Ancestry, had no knowledge their names and photographs were being used, and do not approve of Ancestry's use of their names and likenesses to advertise Ancestry.com subscriptions. Ancestry's website and advertising communications fail to disclose that Plaintiff and the Class are unaffiliated with Ancestry.

11.    Ancestry does not present the Plaintiff's and Class members' photographs as "samples" advertising the purchase of the photographs themselves. Ancestry uses Plaintiff's and Class members' names and photographs to advertise subscriptions to Ancestry.com. An Ancestry.com subscription includes far more than access to the Plaintiff's photographs. At costs ranging between $24.99 and $49.99 per month, a subscription to Ancestry.com entails a wide range of services, including the ability to: "Grow a family tree with exclusive search tools"; "Connect with fellow members"; "Access 15+ billion records" from the U.S.; "Expand your search with 3+ billion worldwide records"; "Find stores among 142+ million pages in the Newspapers.com Basic subscription"; "Explore 537+ million original military records on Fold3.com"; and "Enjoy premium support with a dedicated 1-800 number."

12.    Ancestry is the sole author, designer, and implementor of the advertising techniques and messages giving rise to this lawsuit. Ancestry does not host user-generated content on any part of the website relevant to this lawsuit. Ancestry is the sole curator, designer, and creator of the content described in this Complaint.

13.    Flouting California law, Ancestry did not notify Plaintiff or obtain her consent prior to publishing her name and photograph on its advertising webpages. Accordingly, Plaintiff does not know with certainty how Ancestry obtained her name and photograph. Ancestry's website states that the photographs were originally printed in school yearbooks but does not disclose how Ancestry obtained copies of Plaintiff's and Class members' school yearbooks.

14.    On information and belief, Ancestry obtained the names and yearbook photographs in its database by paying licensing to third parties in exchange for the purported right to make commercial use of the names and photographs therein. No such third party entity obtained Plaintiff's prior consent before making commercial use of Plaintiff's name and identity, as

required by California law. On information and belief, no third party entity obtained any Class members' prior consent.

15.    Ancestry appropriated Plaintiff's and Class members' photographs without permission from the Plaintiff and the Class, the photographers who took the pictures, the authors who created the school yearbooks, or the publishers of the school yearbooks. Ancestry does not hold copyright in Plaintiff's or Class members' yearbooks, nor does it have permission from the copyright holder to republish or distribute Plaintiff's or Class members' yearbooks.

16.    Plaintiff and the Class may have consented to have their photographs taken for school yearbooks intended solely for print distribution amongst a narrow circle of friends, faculty, family, and schoolmates. Plaintiff and the Class did not consent to the commercial use of their photographs to promote a website, nor to the worldwide distribution of their photographs on the Internet.

17.    Ancestry fails to provide any mechanism by which Plaintiff or the Class may request that their photographs and personal information be removed from Ancestry's website. Nor does Ancestry allow Plaintiff or the Class to opt out of the use of their names and photographs in advertisements for subscriptions to Ancestry.com.

18.    California law recognizes the intellectual property and privacy rights of individuals in controlling the use of their names, photographs, likenesses, and personas for commercial purposes.

19.    By using Plaintiff's and Class member's names, likenesses, photographs, and personas in advertisements for website subscriptions without consent, Ancestry violated their intellectual property and privacy rights. Plaintiff and Class members have the right not to have their names, likenesses, photographs, and personas exploited to promote a website with which they have no relationship and which they have no interest in promoting. Plaintiff and Class members have an economic interest in their names, likenesses, photographs, and personas, which Ancestry has stolen, and a privacy interest in their names, likenesses, photographs, and identities, which Ancestry has violated. Ancestry has been unjustly enriched through its actions. Plaintiff

and Class members have the right to recover the money Ancestry earned exploiting their names, likenesses, photographs, and personas.

20.    By these actions, Defendants haves violated and continue to violate California's Right of Publicity statute, codified in Cal. Civ. Code § 3344; California common law prohibiting misappropriation of a name or likeness; and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*. Ancestry used multiple aspects of Plaintiff's and Class members' personas for the commercial purpose of selling website subscriptions, including names, photographs, images, likenesses, distinctive appearances, and personal information. Ancestry failed to obtain Plaintiff's or Class members' prior consent for this commercial use. Class members' personas have commercial value to Ancestry, to the Class members, to the many companies that compete with Ancestry in the market for selling personal information, and to the schools and/or publishing companies who published the yearbooks from which Ancestry misappropriated Class members' names and photographs.

21.    Plaintiff and Class members have suffered injury through the unlawful taking of their valuable intellectual property; through the invasion of their privacy rights protected by statute and common law; through Ancestry's unlawful profiting from its exploitation of their names, personas, and personal information; and through the mental anguish and harm to peace of mind caused by the use of their identities to promote a product they expressed no wish to promote. Plaintiff and Class members are entitled to relief including statutory damages, disgorgement of profits, royalties for the use of their names and personas, restitution of the value of their names and personas, an injunction prohibiting Ancestry's unlawful conduct, an award of attorneys' fees, expenses, and costs, and declaratory and injunctive relief.

**PARTIES**

22.    Defendant ANCESTRY.COM OPERATIONS INC. is a Delaware corporation with its headquarters in Lehi, Utah. It conducts business under the brand names "Ancestry.com," "Ancestry," and other brand names associated with the various websites and services it owns and operates. ANCESTRY.COM INC. is a Delaware corporation with its headquarters in Lehi, Utah.

Defendant ANCESTRY.COM LLC is a Delaware limited liability company with its headquarters in Lehi, Utah.

23.     The Defendants own and operate the website www.ancestry.com. Plaintiff refers to the Defendants collectively as "Ancestry." Ancestry advertises and provides its subscription services to consumers throughout this District, California, and the United States.

24.     Plaintiff Susan Gehringer is a resident of Orange County, California, where she intends to remain.

25.     Ms. Gehringer has never visited, used, or subscribed to the website Ancestry.com.

26.     Ms. Gehringer was a faculty member at Esperanza High School in Anaheim, California.

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) members of the putative class are citizens of a state different from at least one defendant. According to available public records, none of the Defendants are incorporated in California or have their principal place of business in California. The proposed class is composed of California residents. (B) The proposed class consists of at least 100 members. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Cal. Civ. Code § 3344 provides for damages "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use." Because Ancestry advertises using many thousands of records from California yearbooks, the amount in controversy is well over the jurisdictional amount.

28.     This Court has specific personal jurisdiction over Ancestry because a significant portion of the events giving rise to this lawsuit occurred in this state, including: Ancestry's copying of Plaintiff's and Class member's personal information from yearbooks or other sources located in California; Ancestry's display of Plaintiff's and Class member's names and photographs in advertisements expressly directed at California residents, including Plaintiff's and Class member's families; Ancestry's failure to obtain required consent from Class members in

California; and Ancestry's violation of the intellectual property rights of Plaintiff and Class members who reside in California.

29.     Plaintiff Gehringer resides in this state and District. Ancestry violated Ms. Gehringer's intellectual property and privacy rights and misappropriated her name, personal information, and likeness, the locus of which is in this state and District. Ancestry failed to obtain the required consent in this state and District. Ancestry displayed advertisements using Plaintiff's and Class members names, personal information, and personas in this state and District.

30.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district. A substantial portion of the class members reside in this state and district. Named Plaintiff Susan Gehringer resides in this district.

## DEFENDANT'S ILLEGAL MISAPPROPRIATION AND COMMERCIAL USE OF PLAINTIFF'S NAME AND PERSONA

31.     Like all California residents, Plaintiff has the right to control the commercial use of her name, persona, and identity. Cal. Civ. Code § 3344. She has the right to exclude anyone from using her name and persona to advertise without her consent. *Id.* "Any person who knowingly uses" Plaintiff's name and persona "for purposes of advertising or selling, or soliciting purchases of, products . . . or services, without [Plaintiff's] prior consent," thereby violates California law. *Id.*

32.     Plaintiff Susan Gehringer is a private individual who has no relationship with Ancestry. She has never visited, used, or subscribed to Ancestry.com.

33.     Plaintiff did not give consent to Ancestry to use her name, photograph, likeness, or persona in any way. Ancestry never requested her prior consent, as required by California law. Had Ancestry requested her consent, Ms. Gehringer would not have provided it.

34.     Neither Ancestry, nor any third party from whom Ancestry may have purchased and/or licensed copies of Ms. Gehringer's photograph, ever contacted Ms. Gehringer to notify her of Ancestry's commercial use, or to request her consent.

35.     Ms. Gehringer highly values her personal privacy and her ability to control and prevent the commercial use and distribution of her personal information, likeness, and persona without her consent.

36.     Ancestry uses at least seventeen records representing Ms. Gehringer's name, photograph, image, and persona to advertise subscriptions to Ancestry.com.

37.     Ancestry uses Ms. Gehringer's records in at least three types of advertisements. In the **first** type, Ancestry provides a publicly accessible landing page on which visitors may and have searched for Ms. Gehringer by name, location, and/or birth year, as shown below:



38.     Visitors who searched for Ms. Gehringer received in response seventeen records derived from Esperanza High School yearbooks. The records each included Ms. Gehringer's name and location. Most of the seventeen records also included a photograph identifiably depicting Ms. Gehringer's face. For privacy, Plaintiff's counsel redacted all images of Ms. Gehringer's face (the vertical black band shown below). In the original screenshot, she is plainly identifiably. **Users who clicked on any of the images of Ms. Gehringer's face were brought directly to a screen soliciting a paid subscription**. *See* Para. 41 *below*.



39.     Shown below are the remainder of the seventeen records, the first nine of which are displayed on the previous page.

40.     Visitors who hovered over the "View Record" link were shown a promotional pop-up promoting Ancestry subscriptions, which is shown below. The pop-up tied the purchase of a subscription to the prospect of seeing a higher quality image of, and learning more information about, Ms. Gehringer. As shown below, the pop-up promises that "There's more to see" about Ms. Gehringer if the user clicks "Sign Up Now," including "A picture of the original document" and additional personal information about Ms. Gehringer.

41.     Visitors who clicked "Sign Up Now" in the pop-up above, or who clicked on the images of Ms. Gehringer's face shown in search results (*see* ¶ 38), were shown a payment page soliciting the purchase of a membership plan for $24.99 per month. The page says that visitors are paying to receive a broad range of services in addition to information about Ms. Gehringer, including access to the names, images, and personal information about many other individuals. The additional services also include access to "The world's most comprehensive record collection" and the ability to create and grow a "family tree".



42.     On information and belief, Ancestry has displayed lists of search results to visitors that contained one or more of the nine records depicting Ms. Gehringer's face and name, including to visitors in California. On information and belief, one or more visitors viewed the pop-up and/or clicked on Ms. Gehringer's face, leading to the subscription solicitation page, including one or more visitors in California.

43.    In the **second** advertising technique, Ancestry sends promotional emails incorporating Class members' names and personas to potential subscribers. On information and belief, Ancestry has sent such emails incorporating Ms. Gehringer's name, including to people in California. Examples of such emails, with names redacted for privacy, are shown below:





44.    Ancestry sends these and similar emails bearing Ms. Gehringer's and Class members' names and personas to users who have not yet purchased a paid subscription plan. Users who click on the name shown in the email and attempt to review records about Ms. Gehringer or the Class member receive a web page soliciting a subscription to Ancestry.com at prices ranging from $24.99 to $49.99 per month:



45.     In the **third** advertising technique, Ancestry allows users who have not yet signed up for a paying subscription to search for and view Ms. Gehringer's photographs and personal information as part of a two-week "free trial" membership. Each of the seventeen records shown in the search results above is available to free trial users, and on information and belief, has been viewed by at least one free trial user, including at least one in California. The records include full-resolution photographs of Ms. Gehringer that plainly identify her, and personal information including her name, location, and place of work that also plainly identifies her.

46.     Ancestry's sole purpose in using Ms. Gehringer's photograph, name, and personal information as part of its "free trial" membership is to solicit the purchase of paid memberships from its "free trial" members.

47.     Ms. Gehringer does not know how Ancestry obtained her name, photographs, and personal information. The photographs appear to have been taken from the yearbooks Ms. Gehringer's employer produced for students, faculty, and family. Ms. Gehringer did not give permission for her name and photographs to appear on Ancestry.com, nor did she consent to their use by Ancestry for a commercial purpose of any kind.

48.     Ancestry appropriated Ms. Gehringer's persona without permission from Ms. Gehringer, the photographer who took her pictures, the authors who created the high school yearbooks, or the publishers of the high school yearbooks. Ancestry does not hold copyright in yearbooks from Esperanza High School, nor does it have permission from the copyright holder to republish or distribute the yearbooks or the photographs contained therein.

49.     Ms. Gehringer has intellectual property and privacy interests in her photograph, name, likeness, and persona recognized by California statutory and common law. She has the right to exclude anyone from making commercial use of her persona without her permission.

50.     Ancestry has injured Ms. Gehringer by taking her intellectual property without compensation; by invading her privacy rights protected by California statutory and common law; and by unlawfully profiting from its exploitation of her persona.

51.     Ancestry's illegal actions caused Ms. Gehringer mental anguish and disturbed her peace of mind. Ms. Gehringer is deeply uncomfortable that Ancestry is profiting from its use of

her name, photographs, and persona in advertisements for a website she does not use, endorse, or approve of. Ms. Gehringer believes her persona is rightly hers to control. Ancestry's illegal use has left her worried and uncertain about her inability to control how her name and persona is used. Ms. Gehringer feels that Ancestry's non-consensual commercial use of her name and persona is an alarming invasion of her privacy and intellectual property rights.

52.    Through the foregoing actions, Ancestry used multiple aspects of Ms. Gehringer's persona for the commercial purpose of selling website subscriptions, including her name, photograph, image, likeness, distinctive appearance, and personal information. Ancestry failed to obtain Ms. Gehringer's prior consent for this commercial use. Ms. Gehringer's identity has commercial value to Ancestry, to Ms. Gehringer, to the many companies that compete with Ancestry in the market for selling personal information, to the school where Ms. Gehringer is employed, and to the yearbook publisher who created and sold the yearbooks from which Ancestry misappropriated her image.

## CLASS ACTION ALLEGATIONS

53.    Plaintiff brings this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(43). Plaintiff seeks to represent the following class: **All California residents who are not Ancestry.com subscribers and whose names and yearbook photographs Ancestry uses to promote website subscriptions.**

54.    Excluded from the proposed Class are Plaintiff's counsel; Ancestry, its officers and directors, counsel, successors, and assigns; any entity in which Ancestry has a controlling interest; and the judge to whom this case is assigned and the Judge's immediate family.

55.    **Numerosity.** The members of the proposed Class are so numerous that joinder of individual claims is impractical. Ancestry represents that its database of yearbook photographs includes 730 million records. Of those, over 70 million records correspond to schools in California.

56.    **Commonality and Predominance.** There are significant questions of law and fact common to the Class members. Common questions include:

a.    Whether Defendant's misappropriation and commercial use of names and personal information in the advertising techniques described in this Complaint

constitutes the knowing use without prior consent of another's name and persona for the purposes of advertising products within the meaning of Cal. Civ. Code § 3344.

b. Whether Defendant solicited and obtained consent from Plaintiff and the Class members prior to using their personas in promotional advertising flows, as required by Cal. Civ. Code § 3344.

c. Whether Defendant's commercial use of Plaintiff's and Class members' names and personal information in advertisements falls within the exceptions for "use in connection with any news, public affairs, or sports broadcast or account, or any political campaign" within the meaning of Cal. Civ. Code § 3344.

d. The amount by which Defendant profited from and was unjustly enriched by its illegal use of Plaintiff's and Class members' names, personal information, and personas.

e. Whether Defendant's conduct described in this Complaint violates California common law prohibiting the misappropriation of a name or likeness.

f. Whether Plaintiff and the Class are entitled to the injunctive, declaratory, monetary, punitive, and other relief requested in this Complaint.

57.  **Typicality.** Plaintiff's claims are typical of those of the proposed Class. Plaintiff and all members of the proposed Class have been harmed by Defendant's misappropriation and misuse of their identities, names, personas, and other personal information in advertisements promoting website subscriptions. Defendant presents its advertisements in the same way for each Class member.

58.  Just as it did with Plaintiff, Defendant appropriated the names, yearbook photographs, personal information, and personas of all Class members without their prior consent. Defendant's sole purpose in appropriating Class Members' information, photographs, and personas was to solicit the purchase of paid subscriptions.

59.  Just as it did with Plaintiff, Defendant injured, continues to injure, and imminently threatens to injure all Class members. Defendant injured Class members by misappropriating their

intellectual property without compensation. Class members have suffered, and will continue to suffer, monetary harm in the amount they should have been paid as reasonable royalties in exchange for the commercial use of their names and personas. Class members have also suffered, and will continue to suffer, monetary harm in the amount of Defendant's unjust enrichment through its illegal use of their names and personas.

60.     Defendant also has injured and continues to injure Class members by invading and denying them their right to control the commercial use of their names and personas, which is a substantive right long recognized at common law and more recently codified in California's right of publicity statute.

61.     Defendant has injured and continues to injure Class members' dignity and mental well-being by using their names and personas to promote a product they never agreed to promote.

62.     **Adequacy.** The proposed class representative will fairly and adequately represent the proposed Class. Plaintiff's claims are co-extensive with those of the rest of the Class. Plaintiff is represented by qualified counsel experienced in class action litigation of this nature.

63.     **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed Class is impracticable. Many members of the Class do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning Defendant's common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

64.     The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Defendant has acted on grounds generally applicable to the proposed Class, such that final injunctive and declaratory relief is appropriate with respect to the Class as a whole.

65.     The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to Class members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## FIRST CAUSE OF ACTION

### California's Right of Publicity Statute, Cal. Civ. Code § 3344

66.     Plaintiff incorporates by reference the allegations in all preceding paragraphs of this Complaint.

67.     California's right of publicity statute prohibits the "knowing[] use[] of another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Cal. Civ. Code § 3344.

68.     By engaging in the foregoing acts and omissions, Defendant used and uses Plaintiff's and Class members' names, photographs, likeness, personal information, personas, and identities to advertise and sell subscriptions without prior consent.

69.     Plaintiff's and Class members' names and personas have commercial value, as demonstrated by Defendant's commercial use; similar commercial use by Defendant's competitors, including competitive "people search" websites like Classmates.com, Spokeo, and Intelius; the school and yearbook publishers' commercial use of Plaintiff's and Class member's names and photographs to sell yearbooks; and Defendant's payment of licensing fees to data brokers in exchange for the right to make commercial use of names and personas.

70.     Each use of Plaintiff's or a Class members' name, photograph, and/or personal information in a searchable record on Ancestry.com is a separate and distinct violation of Cal. Civ. Code § 3344.

71.     Cal. Civ. Code § 3344 provides that a person who violates the statute is liable "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages," in addition to "any profits from the unauthorized use." The statute also provides for "[p]unitive damages" and "attorney's fees and costs."

72.     As a result of Defendant's violation of Cal. Civ. Code § 3344, Plaintiff and the Class members have suffered injury, and will imminently suffer further injury.

73.     Defendant has injured and continues to injure Class members by misappropriating their intellectual property without compensation. Class members have suffered, and will continue to suffer, monetary harm in the amount they should have been paid as reasonable royalties in exchange for the commercial use of their names and personas. Class members have also suffered, and will continue to suffer, monetary harm in the amount of Defendant's unjust enrichment through its illegal use of their names and personas.

74.     Defendant has injured and continues to injure Class members' by invading and denying them their right to control the commercial use of their names and personas, which is a substantive right long recognized at common law and more recently codified in California's right of publicity statute.

75.     Defendant has injured and continues to injure Class members' dignity and mental well-being by using their names and personas to promote a product they never agreed to promote.

76.     Plaintiff, on behalf of the Class, seeks: statutory damages of $750 for each Class member, or an alternative measure to be determined at a later stage of this litigation; actual damages, including Defendant's unjustly earned profits from its unauthorized use, and the amount that should have been paid in reasonable royalties to Plaintiff and the Class in exchange for the commercial use of their names and personas; punitive damages; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting Defendant's illegal conduct; and declaratory relief.

## SECOND CAUSE OF ACTION

### California Tort of Misappropriation of a Name or Likeness

77.     Plaintiff incorporates by reference the allegations in all preceding paragraphs of this Complaint.

78.     California common law recognizes the tort of "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 416 (Cal. Ct. App. 1983).

79.    By engaging in the forgoing acts and omissions, Defendant (1) used the names, photographs, personal information, and identities of Plaintiff and the Class in advertisements for subscriptions; (2) appropriated Plaintiff's and Class Members' names and likenesses to Defendant's commercial advantage; (3) failed to obtain Plaintiff's and Class members' consent; and (4) injured Plaintiff's and Class Members' by causing harms both economic and dignitary. *See Eastwood*, at 417.

80.    Plaintiff, on behalf of the Class, seeks monetary recovery in the amount of the commercial advantage Defendant derived from its misuse, compensatory damages for Defendant's failure to pay royalties owed, and the entry of an injunction prohibiting Defendant's tortious acts.

### THIRD CAUSE OF ACTION

**California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.***

81.    Plaintiff incorporates by reference the allegations in all preceding paragraphs of this Complaint.

82.    Defendant has and is engaged in unfair competition, as that term is defined in the California Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200 et seq. ("UCL").

83.    As described in this Complaint, Defendant's misappropriation and use without prior consent of Plaintiff's and Class members' names, photographs, personal information, personas, and identities is a violation of California's Right of Publicity statute, Cal. Civ. Code § 3344 and California common law prohibiting misappropriation of a name or likeness.

84.    By engaging in the conduct described in this complaint and violating California law, Defendant engaged in and continues to engage in "unlawful" business acts and practices prohibited by the UCL.

85.    By engaging in the conduct described in this Complaint, including profiting from the sale and use in advertising of personal information it misappropriated without consent, Defendant engaged in and continues to engage in "unfair" business acts and practices prohibited by the UCL.

86. As a result of Defendant's actions, Plaintiff and Class Members have been injured and have lost money and property. Plaintiff and Class members were denied the fair economic value of their names and personas. Defendant should have paid them and failed to do so. They are entitled to restitution, declaratory relief and injunctive relief.

**PRAYER FOR RELIEF**

87. WHEREFORE Plaintiff, individually and on behalf of the proposed Class, requests the following relief:

    a. An order certifying the proposed Class and appointing Plaintiff and her counsel to represent the Class;

    b. A declaration that Defendant's acts and omissions constitute a knowing and willful misappropriation of names, photographs, personal information, and personas, and infringe on protected intellectual property and dignitary rights, in violation of California statutory and common law;

    c. Statutory damages in the amount of $750 for each Class member, or an alternative measure to be determined at a later stage of this litigation;

    d. Nominal damages in recognition of Defendant's ongoing violation of the legally protected property and dignitary rights of Plaintiff and the Class members;

    e. Preliminary and permanent injunctive relief enjoining Defendant from continuing to operate www.ancestry.com without appropriate safeguards to ensure Class member's names and personas are not used to advertise without their consent;

    f. Restitution to Plaintiff and Class members of the money Defendant unjustly earned through subscription sales made by misappropriating their names and personas;

    g. Damages for actual harm; profits earned by Defendant; and reasonable royalties owed to Plaintiff and the Class;

h. The award of reasonable attorneys' fees and costs incurred by Plaintiff and the Class; and

i. Orders granting such other and further relief as this Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

Dated: December 30, 2024

By: */s/ Andrew Gunem*
Andrew Gunem (SBN 354042)
Samuel J. Strauss (to be admitted *pro hac vice*)
Raina C. Borelli (to be admitted *pro hac vice*)
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

Benjamin R. Osborn (to be admitted *pro hac vice*)
LAW OFFICE OF BENJAMIN OSBORN
63 Fiddlers Elbow Rd.
Margaretville, NY
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT – 24